# CURTIS J. FARBER

Attorney at Law

350 Broadway, 10th Floor
New York, NY 10013
Tel: (212) 334-4466
Fax: (212) 226-3224
curtisfarber@mindspring.com

August 31, 2008

Honorable Gerard E. Lynch
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                RE: United States v. Diego Orozco-Mendez
                     Docket No. 05-Cr-1069 (GEL)

Dear Judge Lynch:

As counsel for Diego Orozco-Mendez, I am submitting the instant letter in support of the defendant's motion made pursuant to U.S.S.G. §3B1.2 and 2D1.1(a)(3), for a downward adjustment of the applicable Sentencing Guideline Offense Level due to his limited role in the charged conspiracy. The defendant additionally moves this Court pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. §§3553(a) for a reduction in his sentence due to the unusually harsh pre-trial conditions in which he was detained in Colombia while he was awaiting extradition in this case. Finally, the defendant moves this Court pursuant to U.S.S.G. §5G1.3(b) to credit him with seven-hundred two (702) days, all the time he was imprisoned in Colombia between November 30, 2005 and November 2, 2007. Sentencing is September 25, 2008.

The offense conduct:

Mr. Orozco-Mendez acted as a messenger for Gonzalo Salazar Oliveros, relaying messages concerning the heroin-trafficking conspiracy, to other co-conspirators. He additionally agreed on two occasions to have monies due him by Mr. Oliveros be invested in two heroin shipments, with the expectation that he would net additional monies.

Procedural background and history of the case:

Diego Orozco-Mendez was arrested on November 30, 2005 in Colombia. While awaiting extradition on a warrant issued out of the Southern District of New York, Mr. Orozco-Mendez was incarcerated in Cómbita Prison. He was not brought to this district until November 2, 2007. Subsequent to his arrival, Mr. Orozco-Mendez truthfully proffered

1

with the government, fulfilling his obligations pursuant to of 18 U.S.C. §3553(f) and U.S.S.G. §5C1.2. Although the government found Mr. Orozco-Mendez credible and cooperative, they disagreed with his position that he was a "minor" participant in this offense as defined by U.S.S.G. §3B1.2(b). Accordingly, Mr. Orozco-Mendez, in entering his plea of guilty before this Court on June 4, 2008, did so without the benefit of a plea agreement. The Pimentel Letter filed by the government calculates the base offense level to be 36, with a two level reduction pursuant to U.S.S.G. §§ 5C1.2 and 2D1.1(b)(11), and an additional three level reduction pursuant to U.S.S.G. §§ 3E1.1(a)and (b), for a final adjusted offense level of 31, Criminal History Category I. This offense level and criminal history category prescribes a sentencing range of 108 to 135 months imprisonment.

Criminal History:

As is reflected in the Pre-sentence Report, Mr. Orozco-Mendez has no criminal history.

The motion for a minor role adjustment:

Mr. Orozco-Mendez does not deny his participation in the charged conspiracy. However, he respectfully submits that as a "messenger", his role was minor when compared with other participants in the conspiracy. He had no role in securing the narcotics in the first instance, nor did he have any ownership interests other than the nominal investment he made, an investment which consisted of agreeing to have money owed him be invested in two particular shipments with the anticipation there would be a financial return. Further, Mr. Orozco-Mendez was not a manager or supervisor, nor did he plan or arrange for any shipment into the United States. With regard to the charged conspiracy, Mr. Orozco-Mendez was, by all accounts, "low man on the totem pole". Accordingly, it is respectfully submitted that Mr. Orozco-Mendez is entitled to receive a minor role adjustment pursuant to Sentencing Guidelines 3B1.2 and 2D1.1(a)(3).

If this Court were to afford Mr. Orozco-Mendez this role adjustment, utilizing the base offense level advanced by the government, the adjusted offense level would be 26. This computation is derived as follows: two level reduction pursuant to U.S.S.G. §§ 5C1.2 and 2D1.1(b)(11); two level reduction pursuant to U.S.S.G. § 3B1.2; three level reduction pursuant to U.S.S.G. § 2D1.1(a)(3); and three level reduction pursuant to U.S.S.G. §§ 3E1.1(a) and (b). Offense level 26, Criminal History Category One, carries a recommended sentence of 63 -78 months.

Pre-trial detainment conditions:

I am respectfully moving the Court for a downward departure under Sentencing Guidelines §5K2.0 and 18 U.S.C. §3553. In so moving, I am asking the Court to find that the pre-trial confinement conditions to which Mr. Orozco-Mendez was subjected were so cruel and inhuman that they are of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines, and accordingly sentence him outside the applicable guideline range.

As noted above, Mr. Orozco-Mendez was detained in Colombia for almost two years pending his extradition to the United States. During this period of time he was detained in the infamous "Cómbita Prison". Mr. Orozco-Mendez reports that the conditions of his detainment were harsh and terrifying. Indeed the United States Department of State reports on its web site that this prison lacks potable water and that there is a proliferation of insects and rodents. Food additionally is described as being of poor quality and insufficient nutritional value. Prisoners only survive by receiving supplemental food rations from private sources. In general, Colombia's prisons are known for violence against inmates, both from other inmates and the routine use of excessive force and brutal treatment by prison guards. The Justice for Colombia website observes that "overcrowding, lack of security, corruption and an insufficient budget remained serious problems in the prison systems". Amnesty International notes repeated complaints of prisoners being left exposed for long periods of time to the sun and rain, and being given rotten or contaminated food.

The Second Circuit has recognized that pre-trial confinement conditions may in appropriate cases be a permissible basis for a downward departure. *United States v. Carty*, 264 F.3d 191 (2d Cir. 2001). Courts have granted relief generally where the conditions in question are extreme to an exceptional degree and a sentence, if not otherwise mitigated, would inflict upon the particular individual a magnitude of punishment effectively disproportionate to that meted out to offenders in the ordinary case. *United States v. Mateo*, 299 F. Supp.2d 201 (SDNY 2004); *United States v. Francis*, 129 F. Supp.2d 612 (SDNY 2001).

The policy statement for Sentencing Guidelines §5K2.0 notes "the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."" As the United States Supreme Court observed in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed. 392 (1996), the Sentencing Guidelines do not eliminate all of the District Court's discretion. Recognizing the wisdom, even the necessity of sentencing procedures that take into account individual circumstances, Congress permits a District Court to depart from the applicable guideline range in an atypical case. Such a case is defined as one in which a particular guideline linguistically applies but where the conduct significantly differs from the norm. See also *United States v. Bryson*, 163 F.3d 742 (2d Cir. 1998), *United States v. Core*, 125 F.3d 74 (2d Cir. 1997).

In discussing downward departure applications in conjunction with The Sentencing Reform Act of 1984, the Second Circuit observed that if there exist an offender characteristic or circumstance present to an unusual degree that distinguishes the case from the "heartland" of cases covered by the guidelines in a way that is important to the statutory purpose of sentencing, a sentencing court is free to consider an otherwise declared non-relevant for sentencing purposes offender characteristic and/or circumstance. *United States v. Galante*, 111 F.3d 1029, 1033 (2d Cir. 1997).

3

A downward departure in sentencing Mr. Orozco-Mendez is warranted upon the grounds that his personal experience and suffering while imprisoned in Colombia, a incarceration directly related to offenses alleged in the instant indictment, are of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission when it formulated the guidelines.

Credit for time served in Colombia:

As indicated above, the time the defendant served in Colombia pending extradition is seven hundred two (702) days, the number of days between November 30, 2005 and November 2, 2007. Such time is appropriately credited to him pursuant to U.S.S.G. §5G1.3(b). See also *United States v. Rivers*, 329 F.3d 119 (2d Cir. 2003).

Sentencing recommendation:

Diego Orozco-Mendez is deeply remorseful about his conduct. He has no prior criminal history. It is respectfully requested that the Court grant the defendant's motions in all respect and sentence him to a term of one thousand seventeen (1,030) days, the time he already served as of September 25, 2008. The imposition of this sentence would fully meet the statutory purposes of sentencing, including respect for the law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes by the defendant. 18 U.S.C. §3553(a).

Thank you.

                                                Respectfully submitted,

                                                Curtis Farber

cc: A.U.S.A. Virginia Chavez Romano
     Probation Officer Johnny Kim