

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 19, 2008

**By Fax and Hand Delivery**
Honorable Gerard E. Lynch
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: <u>United States v. Diego Orozco Mendez, 05 Cr. 1069 (GEL)</u>

Dear Judge Lynch:

  The Government respectfully submits this letter in advance of the sentencing in this case, and in response to the August 31 submission of the defendant Diego Orozco Mendez ("Orozco" or the "defendant"). Orozco's sentencing is scheduled to take place on September 25, 2008.

  For the reasons set forth herein, the Government submits that a sentence within the applicable Guidelines range of 108 to 135 months is reasonable and appropriate in this case.

### The Offense Conduct

  Orozco was charged in the above-referenced indictment in two counts: conspiracy to import, and distribute with the intent to import, one kilogram and more of heroin, and conspiracy to distribute, and possess with the intent to distribute, one kilogram and more of heroin. The evidence against Orozco consisted of wiretap interceptions over phones in Colombia, heroin seizures, and information from cooperating witnesses.

  Orozco met with the Government in an effort to qualify for safety valve relief. During his meetings with the Government, Orozco told the Government, in substance and in part that:

- he befriended co-conspirator Gonzalo Salazar Oliveros in or about 2002-2003;

- he became aware that Salazar Oliveros was involved in drug trafficking;

- he began to assist Salazar Oliveros' drug trafficking activities by acting as his chauffeur in Cali, Colombia, taking him to meetings with narcotics associates;

- he used his training as an attorney to represent members of Salazar Oliveros' drug organization who were arrested, which representation he took on at the request of Salazar Oliveros;

The Honorable Gerard E. Lynch
September 19, 2008
Page 2

- he acted as a messenger for Salazar Oliveros, delivering messages between him and his drug associates so that use of the phone could be minimized;

- he "invested" in at least two heroin loads that were destined to the United States, purportedly to recoup a debt owed him by Salazar Oliveros. Specifically, Orozco said that he owned small portions of a two-kilo load seized in July 2005 and a 16-kilo load seized in early October 2005 (PSR ¶ 22);[1]

- In addition to having an ownership interest in a small portion of the 16-kilo load, Orozco helped Salazar Oliveros package that load by obtaining household items to use as a "cover" for the drug load, that is, to conceal that the contents of the shipment were drugs.

Orozco said that he was not paid by Salazar Oliveros for his efforts to further the drug conspiracies. However, he admitted that he received a variety of benefits from Salazar Oliveros, including: use of a car and Salazar Oliveros' country home; the purchase of cars by Salazar Oliveros' relatives (Orozco sold cars in addition to practicing law) at a price that was very favorable to Orozco; and the referral of legal clients, as noted above. (See also PSR ¶ 42).

Following its meetings with Orozco, the Government agreed that Orozco qualified for safety valve relief.

### The *Pimentel* Letter and Guilty Plea

Orozco pleaded guilty on June 4, 2008, to the two counts in the Indictment. Prior to his entry of a guilty plea, the Government provided Orozco with a Pimentel letter, advising him of the Government's position on the applicable Sentencing Guidelines. The Pimentel letter set forth a Guidelines calculation premised on a base offense level of 36. PSR ¶ 4(b). The Pimentel letter calculation further deducted two levels to account for safety valve relief, PSR ¶ 4(c), and an additional three levels for acceptance of responsibility, PSR ¶ 4(d), thus arriving at a Guidelines range of 31. In light of the fact that Orozco was in Criminal History Category I, the Pimentel letter advised that the applicable Sentencing Guidelines range was 108 to 135 months' imprisonment.

---

[1] Orozco admitted in his safety valve proffer sessions that he was aware of the total amount of each load in which he held a small portion. He was also aware that in acting as a messenger between Salazar Oliveros and other members of the drug organization, he was facilitating the importation of additional quantities of heroin.

The Honorable Gerard E. Lynch
September 19, 2008
Page 3

## Argument

### Orozco Should Not Receive A Minor Role Adjustment

In his August 31 sentencing submission, Orozco, characterizing his role in the conspiracy as that of a mere "messenger," argues that he should receive a minor role adjustment. This argument should be rejected.

The Sentencing Guidelines provide that a defendant's base offense level may be reduced by two levels if the defendant was a "minor participant," defined in the Commentary to the relevant Guideline as a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. 3B1.2(b) & comment. (n. 5). An adjustment under Section 3B1.2(b) is appropriate only when a defendant is "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3(A)). "It is the defendant's burden to establish by a preponderance of the evidence that his level of culpability entitles him to a minor role reduction." United States v. Garcia, 920 F.2d 153, 156 (2d Cir. 1990) (per curiam). A district judge's analysis of the defendant's role in criminal activity is "'highly fact-specific and depends upon the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise.'" United States v. Carpenter, 252 F.3d 230, 234 (2d Cir. 2001) (quoting United States v. Shonubi, 998 F.2d 84, 90 (2d Cir. 1993)).

The Second Circuit has repeatedly emphasized that a minor role reduction "'will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' ... as compared to the average participant in such a crime.'" United States v. Carpenter, 252 F.3d at 235 (quoting United States v. Rahman, 189 F.3d 88, 159 (2d Cir. 1999)). "Accordingly, the fact that a defendant played a minimal or minor role in his offense 'vis-à-vis the role of his co-conspirators is insufficient, in and of itself, to justify a [mitigating role] reduction.'" United States v. Carpenter, 252 F.3d at 235 (quoting United States v. Ajmal, 67 F.3d 12, 18 (2d Cir. 1995)).

As detailed by Orozco himself during his safety valve proffers, he was more than the mere "messenger." He was, in fact, a close associate of Salazar Oliveros, who was a leader of the organization. Orozco facilitated Salazar Oliveros' drug trafficking efforts in a number of ways. Orozco also owned some of the heroin that was destined to the United States on two occasions, and was aware that much more was contained in the shipments in which he had ownership interest. Orozco's passing of messages, or role of "messenger," moreover, was important to the success of the organization, as it was a method of communication deliberately designed to minimize the risk of detection by law enforcement. That Orozco had this role in the organization demonstrates the relationship of trust he had with Salazar Oliveros.

The Honorable Gerard E. Lynch
September 19, 2008
Page 4

In light of Orozco's relationship to Salazar Oliveros, and the actions that Orozco took to further the conspiracy, it is clear that Orozco was well-connected to at least one high-level member of the organization, with whom he had a relationship of confidence; that – while not the "owner" of the majority of the drugs shipped out of Colombia – he was aware of the scope of the organization and the quantities of heroin in which it trafficked; and that his various activities within the organization were crucial to its success. Orozco's role cannot be said to have been "minor" compared to that of the average participant in a drug crime.

For these reasons, Orozco should not receive a minor role adjustment.

### Orozco Should Not Receive A Lesser Sentence Based On The Additional Time He Spent In A Colombian Prison Fighting Extradition

Orozco also argues that he should receive a lesser sentence based on his pre-extradition detention in Combita prison in Colombia.

The Government understands that this Court has granted sentence reductions to other defendants in this case based in part on the Government's representation that it does not dispute the defense's characterization of the conditions of confinement in Combita. Without agreeing that such a reduction is appropriate, the Government makes this representation here, for purposes of this case only. However, the Government notes that Orozco is differently situated than the other extradited defendants in this case, in that Orozco challenged his extradition and, as a result, remained in Colombia longer than his co-defendants. (The Government is not aware of any merit to the extradition challenge Orozco brought: the proof against Orozco was very strong and there was no issue about Orozco's identity). Whereas Orozco's co-defendants arrived in the United States in 2006, and, in some instances, made efforts to resolve their cases even before they arrived to the United States, Orozco delayed the process and thus remained in Colombia until the end of 2007. To the extent the Court bases any sentence reduction on the time spent in Combita, the Government believes that the additional year Orozco spent challenging his extradition should not factor into the calculation.

Nor should the Court deduct the time Orozco spent in a Colombian prison awaiting extradition from any term of imprisonment the Court imposes, as Orozco requests in his August 31 submission. Orozco's position that such time is appropriately credited pursuant to U.S.S.G. § 5G1.3(b) is incorrect; that Guideline has no bearing on this case, as it applies to undischarged terms of imprisonment in a separate case. Whether the pre-extradition detention time is credited towards Orozco's sentence is governed by 18 U.S.C. § 3585(b), which states, in relevant part, that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – (1) as a result of the offense for which the sentence was imposed..." Any applicable credit for time already

The Honorable Gerard E. Lynch
September 19, 2008
Page 5

served should be calculated by the Bureau of Prisons after the Court imposes sentence in this case.

### Under the 3553(a) Factors, A Sentence Within the Guidelines Range of 108 To 135 Months' Imprisonment Is Reasonable

The Government submits that a sentence within the Guidelines range of 108 to 135 months' imprisonment is a reasonable one. During much of 2005, Orozco was involved in the importation of several multi-kilogram heroin loads, totaling at least 10 to 30 kilograms. Orozco personally and directly assisted the drug-trafficking activities of a leader of this organization, Gonzalo Salazar Oliveros, by undertaking a number of different tasks, described above. As such, Orozco was well aware of the scope of the organization and its drug importation activities. Orozco also invested in portions of two heroin shipments destined to the United States, and thus stood to profit from the sale of narcotics.

Unlike many drug defendants who may become involved in drug trafficking activities in part because of a lack of education or other financial prospects, Orozco is a well-educated man. He was trained as a lawyer and therefore had the foundation to earn money through legitimate means. As a lawyer who practiced criminal law, he was also acutely aware of the drug laws and the consequences of violating those laws.

That Orozco is a first-time offender is already taken into account in his Guidelines calculation, since he is in Criminal History Category I. Orozco has received the additional benefit – also related to his status of being a first-time offender – of being eligible for a sentence below the 10-year statutory minimum.

In light of all these facts, a sentence within the Guidelines range of 108 to 135 months is reasonable.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
Virginia Chavez Romano
Assistant United States Attorney
(212) 637-1037

cc:  Curtis Farber, Esq. (By fax)
     Probation Officer Johnny Kim